IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

JUNE 1998 SESSION



FILED

September 29, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellant, | ) | C.C.A. No. 01C01-9707-CR-00253 |
| | ) | |
| vs. | ) | Putnam County |
| | ) | |
| JERRY HUSKINS, | ) | Hon. John Turnbull, Judge |
| | ) | |
| Appellee. | ) | (DUI - Interlocutory State Appeal) |

FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**ELIZABETH B. MARNEY**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**WILLIAM EDWARD GIBSON**
District Attorney General

**TONEY CRAIGHEAD**
Asst. District Attorney General
145 S. Jefferson Ave.
Cookeville, TN  38501

FOR THE APPELLEE:

**DON DICKERSON**
Attorney at Law
310-D E. Broad St.
Cookeville, TN  38501

OPINION FILED:_____

**REVERSED AND REMANDED**

**CURWOOD WITT, JUDGE**

## OPINION

We granted the state's petition for an interlocutory appeal[1] in this prosecution for driving under the influence to review the Putnam County Criminal Court's order suppressing the results of the defendant's blood alcohol test. The trial court suppressed the evidence because the law enforcement officer who ordered the test failed to warn the defendant as required by Tennessee Code Annotated section 55-10-406(a)(2) that failure to give a sample would result in suspension of the defendant's driver's license. For the reasons that follow, we find the trial court's ruling in error. Accordingly, we reverse the order suppressing the evidence and remand this matter to the trial court for further proceedings consistent with this opinion.

Law enforcement officers discovered the defendant at the scene of a one-car wreck. The defendant was transported by emergency medical personnel to a local hospital for treatment of his injuries. While the defendant was at the hospital, a law enforcement officer asked the defendant to give a sample for blood alcohol testing. The defendant agreed to give the sample. The officer did not tell the defendant the consequence of refusing the procedure. After the sample was drawn, the defendant was arrested for the crime of driving under the influence.

## I

The primary issue for the court is whether the trial court correctly suppressed the blood alcohol test results based upon the officer's failure to give the license suspension admonition.

As pertinent to this appeal, Tennessee's implied consent law provides

---

[1]Tenn. R. App. P. 9.

2

(a)(1)  Any person who drives any motor vehicle in this state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided that, such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug, as defined in § 55-10-405.  Any physician, registered nurse, licensed practical nurse, clinical laboratory technician, licensed paramedic or, notwithstanding any other provision of law to the contrary, licensed emergency medical technician approved to establish intravenous catheters, or technologist, or certified and/or nationally registered phlebotomist who, acting at the written request of a law enforcement officer, withdraws blood from a person for the purpose of making such a test, shall not incur any civil or criminal liability as a result of the withdrawing of such blood, except for any damages that may result from the negligence of the person so withdrawing.  Neither shall the hospital nor other employer of the previously listed health care professionals incur, except for negligence, any civil or criminal liability as a result of the act of withdrawing blood from the person.

(2) Any law enforcement officer who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alcoholic or drug content of the driver's blood, shall, prior to conducting such test, advise that refusal to submit to such test will result in the suspension of the driver's operator's license by the court.  The court having jurisdiction of the offense for which such driver was placed under arrest shall not have the authority to suspend the license of a driver who refused to submit to the test if such driver was not advised of the consequences of such a refusal.

(3)  If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test and advised of the consequences for refusing to do so, refuses to submit, the test shall not be given and such person shall be charged with violating this subsection.  The determination as to whether a driver violated the provisions of this subsection shall be made at the same time and by the same court as the one disposing of the offense for which such driver was placed under arrest.  If the court finds that the driver violated the provisions of this subsection, the driver shall not be considered as having committed a criminal offense; however, the court shall suspend the license of such driver for a period of six (6) months.[2]

(b)  Any person who is unconscious as a result of an accident or is unconscious at the time of arrest or apprehension or otherwise in a condition rendering that person incapable of refusal, shall be subjected to the test as provided for by §§ 55-10-405 - 55-10-412, but the results thereof shall not be used in evidence against that person in any court or before any regulatory body without the consent of the person so tested.  Refusal of release of the evidence so obtained will result in the suspension of that person's driver['s] license, thus such

---

[2]This subsection was amended in 1996 to provide for a twelve-month suspension.

refusal of consent shall give such person the same rights of hearing and determinations as provided for conscious and capable persons in this section.

. . .

(e) Nothing in this section shall affect the admissibility in evidence, in criminal prosecutions for aggravated assault or homicide by the use of a motor vehicle only, of any chemical analysis of the alcoholic or drug content of the defendant's blood which has been obtained by any means lawful without regard to the provisions of this section.

Tenn. Code Ann. § 55-10-406(a)(1), (a)(2), (a)(3), (b), (e) (Supp. 1995) (amended 1996).

The state argues that the statutory scheme does not contemplate suppression of lawfully obtained evidence if a driver consents to the blood alcohol test, even absent the license suspension admonition. Further, the state claims, logic dictates that the statute be interpreted to allow consensual submission to blood alcohol testing without recitation of the consequences of failing to submit. On the other hand, the defendant argues that the proper remedy is suppression because the statute speaks in clear, unequivocal terms that the officer "shall" give the license suspension warning "prior to" the test. Further, according to the defendant, subsection 55-10-406(e) carves out a limited exception for admissibility of evidence obtained without the admonition only if the defendant faces charges for aggravated assault or homicide by use of a motor vehicle. The defendant finds the omission of the crime of DUI from subsection 55-10-406(e) to be telling of the legislature's intent that test results obtained without the admonition be suppressed in DUI cases.

Our review of the statute and relevant caselaw leads us to agree with the state. The clear purpose of the admonition requirement is to warn drivers of the consequences of failing to comply with the implied consent law. If a driver has been so warned yet refuses a blood alcohol test, his driver's license is subject to

4

suspension. The warning puts him on notice of that consequence. After mandating the admonition regarding a refusal to be tested, the statute in the next sentence states the result of the refusal: "The court . . . shall not have the authority to suspend the license of a driver *who refused to* submit to the test *if such driver was not advised of the consequences of such refusal.*" Tenn. Code Ann. § 55-10-406(a)(2) (emphasis added).

The language used in the statute makes it clear that the warning is *not* a Miranda-type warning that the driver is not compelled to give evidence against himself. As we have previously observed, an officer's request that a driver submit to a blood alcohol test "is not governed by the Miranda rule." State v. Snapp, 696 S.W.2d 370, 371 (Tenn. Crim. App. 1985); see also State v. Frasier, 914 S.W.2d 467, 471 n.4 (Tenn. 1996) (Miranda warnings not required in conjunction with request that driver take a blood alcohol test because test is not considered to be an interrogation) (Reid, J., dissenting); State v. Blackwood, 713 S.W.2d 677, 680 (Tenn. Crim. App. 1986). In other words, test results obtained from a consensual blood alcohol test are not subject to suppression simply because Miranda warnings were not given. The license revocation admonition in the case at bar did not even rise to the level of a Miranda-type warning; *a fortiori*, the defendant's test results are not subject to suppression simply because the admonition was not given. See Snapp, 696 S.W.2d at 371.

This result is indirectly supported by our reasoning in State v. Dennie Ray Loden, No. 03C01-9311-CR-00380 (Tenn. Crim. App., Knoxville, Jan. 19, 1995), perm. app. denied (Tenn. 1995). In that case, the defendant argued that evidence of his refusal to take a blood alcohol test was subject to suppression because the officer had not fully complied with the requirement that the license suspension admonition be given. Dennie Ray Loden, slip op. at 5. We declined to

5

hold that the admissibility of the defendant's refusal to take the test hinged on the officer's compliance with the warning requirement of subsection 55-10-406(a)(2). We see no reason why a different rule should apply when the evidence in question consists of test results, rather than a refusal to take the test.

Further, this holding is supported by analogy to State v. Gilbert, 751 S.W.2d 454 (Tenn. Crim. App. 1988). In Gilbert, the defendant argued that the trial court erroneously admitted evidence of his blood alcohol content because the state failed to prove that his blood sample was drawn in accord with subsection 55-10-406(a)(1). Gilbert, 751 S.W.2d at 461. In rejecting this argument, a panel of this court observed that the purpose of subsection 55-10-406(a)(1) is to "protect the donor [defendant] from being subjected to unhealthful conditions in the procurement of a blood sample and to prohibit the donor [defendant] from being subjected to unqualified people taking samples." State v. Gilbert, 751 S.W.2d 454, 461 (Tenn. Crim. App. 1988) (quoting State v. Stowers, 649 S.W.2d 607, 608-09 (Tenn. Crim. App. 1983)).[3] In other words, the purpose of the statute is to protect the defendant from a concern ancillary to the admission of his blood alcohol test results in a prosecution involving alleged drinking and driving. The Gilbert panel held that the state was not required to prove compliance with the statute as a prerequisite to admissibility. Gilbert, 751 S.W.2d at 461; cf. State v. Melvin L. Gipson, No. 86-66-III (Tenn. Crim. App., Nashville, August 19, 1986).

---

[3]Stowers actually addressed the purpose of section 55-10-410, although Gilbert cites it as authority for the purpose of subsection 55-10-406(a)(1). See Stowers, 649 S.W.2d at 608. We note, however, that both subsection 55-10-410(a) and subsection 55-10-406(a)(1) contain virtually identical lists of medical personnel from which the person taking the sample is to be chosen. Compare Tenn. Code Ann. § 55-10-406(a)(1) with Tenn. Code Ann. § 55-10-410(a). Subsection 55-10-406(a)(1) immunizes these individuals from non-negligent civil and criminal liability in the performance of their duties attendant to taking the sample, while subsection 55-10-410(a) mandates that the sample "shall" be drawn by an individual in one of the enumerated categories. Given the similarity of the two statutes, we believe Gilbert is compelling authority for the purpose of subsection 55-10-406(a)(1), notwithstanding its reliance upon Stowers.

The situation at bar is analogous to Gilbert. As we observed above, the clear import of subsection 55-10-406(a)(2) is to protect a driver from license suspension if he was not admonished about license suspension. Just as Gilbert found that subsection 55-10-406(a)(1) protects the defendant from ancillary harm, so does subsection 55-10-406(a)(2). The latter section is designed to advise the defendant of the detriment that results from refusing a blood test in connection with DUI or other drinking-and-driving crimes. Thus, the statute's purpose is *not* to carve out a rule of exclusion when the provisions of subsection (a)(2) have not been followed. As applied to the facts of the case at bar, the officer's non-compliance with the license suspension warning requirement does not warrant suppression of the defendant's blood alcohol test results at trial.

In reaching this result, we have rejected the defendant's argument that subsection 55-10-406(e) silently mandates suppression of test results in a case such as the one at bar. We interpret subsection 55-10-406(e) as addressing the admissibility of otherwise lawfully obtained test results where the sample was not voluntarily taken, i.e. when the defendant refuses to submit voluntarily to testing or when the defendant is unconscious or otherwise incapable of rendering consent at the time the sample is drawn.[4] See, e.g., State v. Cleo Mason, No. 02C01-9310-CC-00233, slip op. at 11-22 (Tenn. Crim. App., Jackson, Mar. 13, 1996) (Wade, J., concurring in results only); State v. Terry E. Colorigh, No. 01C01-9112-CR-00380, slip op. at 4-5 (Tenn. Crim. App., Nashville, Oct. 22, 1992). Nothing in the statute, the developed caselaw of this state, or the defendant's brief causes us to believe

---

[4]Section 55-10-406 provides greater individual protection than the United States and Tennessee Constitutions with respect to the voluntariness of blood alcohol sampling. Cleo Mason, slip op. at 12 (citations omitted). The net effect of subsection (e) is to strip defendants in cases of aggravated assault and homicide by use of a motor vehicle of the statute's greater protections, leaving them with only the lesser constitutional protections. See generally Cleo Mason, slip op. at 10-22.

that the legislature intended for subsection (e) to operate as a bar to admissibility if the admonition contemplated by subsection (a)(2) is not given.

Accordingly, the trial court erred in suppressing the defendant's blood alcohol test results.

## II

The defendant has raised a secondary issue, namely, whether the state waived its right to appeal by failing to comply with an allegedly agreed upon abbreviated time for filing an application for interlocutory appeal. Apparently, the assistant district attorney announced at the conclusion of the suppression hearing that he would decide whether to pursue an appeal within ten days.[5] The trial court entered an order suppressing the evidence and giving the state ten days from the date of the hearing in which to decide whether to pursue appellate relief. The state initiated its application within the 30 days provided by Rule of Appellate Procedure 9(b), but not within the ten days allowed in the trial court's order.

The defendant is not entitled to the relief he seeks because the trial court was without the authority to shorten the time period for the state's Rule 9 application. "The supreme court has the power to prescribe by general rules the forms of process, writs, pleadings and motions, and the practice and procedure in all of the courts of this state in all civil and criminal suits, actions and proceedings." Tenn. Code Ann. § 16-3-402 (1994). "Each of the other courts of this state [courts other than the supreme court] may adopt additional or supplementary rules of practice and procedure not inconsistent with or in conflict with the rules prescribed by the supreme court." Tenn. Code Ann. § 16-3-407 (1994). The trial court's

---

[5]This statement does not appear in the transcript of that hearing that has been provided to this court in the record.

8

inclusion of a ten-day period for seeking a Rule 9 appeal is in direct conflict with the supreme court's edict of a 30-day limitation period in Rule 9(b). Accordingly, the trial court was without authority to alter the time period, and the state cannot be bound by a ruling the trial court was without authority to issue. Cf. State v. Best, 614 S.W.2d 791, 793 (Tenn. 1981) (court of criminal appeals was without authority to impose time limitation on Rule 10 application where rule does not impose a time limitation); Ford Motor Co. v. Moulton, 511 S.W.2d 690, 695 (Tenn. 1974) (court of appeals may modify its rules so long as there is no conflict with rules of the supreme court). The defendant is not entitled to relief based upon the state's failure to comply with an invalid time limitation.

The trial court's order suppressing the defendant's blood alcohol test results is reversed. This case is remanded to the trial court for further proceedings.

_____
CURWOOD WITT, JUDGE

CONCUR:

_____
JOE G. RILEY, JUDGE

_____
R. LEE MOORE, JR., SPECIAL JUDGE

9