# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 13, 2004 Session

## STATE OF TENNESSEE v. PATRICK D. COLLINS

**Interlocutory Appeal from the Criminal Court for Davidson County**
**No. 2001-T-324      Frank G. Clement, Jr., Judge**

---

**No. M2002-02885-CCA-R9-CO - Filed May 3, 2004**

---

The trial court dismissed count two of this indictment charging the violation of the implied consent law and barred the State from arguing in the defendant's trial for DUI that he knew he would suffer a loss of driver's license if he refused the breath test. The State appeals. We conclude that the defendant was sufficiently advised of the possible suspension of his driver's license upon his refusal to submit to testing to satisfy the warning requirement of Tennessee Code Annotated section 55-10-406(a)(2). The defendant need not be advised of the correct and exact term of the suspension in order to satisfy the statutory warning requirements. The defendant was advised that he would suffer a loss of driver's license if he refused the breath test. We reverse the trial court's dismissal of the violation of implied consent law. Likewise, we reverse the trial court's limiting the State from arguing that the defendant knew he would suffer a loss of driver's license if he refused the breath test. Accordingly, we remand for trial consistent with this opinion.

**Tenn. R. App. P. 9; Judgment of the Criminal Court Reversed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Scott R. McMurtry, Assistant District Attorney General, for the appellant, State of Tennessee.

V. Michael Fox, Nashville, Tennessee, for the appellee, Patrick D. Collins.

## OPINION

The defendant, Patrick D. Collins, was charged in a two-count indictment for driving under the influence, second offense, and for violation of the implied consent law. The defendant, prior to trial, filed a motion in limine seeking to bar the State from introducing evidence of the defendant's refusal to submit to a blood alcohol test. The defendant based the motion on the fact that the

arresting officer had read an outdated version of the "Rights of the Suspect," which advised the defendant that refusal would result in a one-year license suspension. In reality, the defendant's refusal, because he had a prior DUI conviction, would result in a two-year suspension.

The trial court ruled that the failure to read the current and correct "Rights of the Suspect" did not advise the defendant of the "consequences" of his refusal. Therefore, the trial court held that the State was barred from seeking suspension of driver's license pursuant to Tennessee Code Annotated section 55-10-406 and barred from arguing to the jury on the DUI charge that the defendant knew he would lose his driver's license if he refused to submit to the test.

## Analysis

The State, in this interlocutory appeal, poses two issues for our review:

I.  Can the State seek civil penalties under Tennessee Code Annotated section 55-10-406 if the arresting officer did not properly explain the penalties in reading the "Rights of the Suspect" to the defendant?

II. Can the State properly argue to the jury in the DUI charge that the defendant refused to submit to a blood or breath alcohol test, knowing that he would lose his driver's license by refusal, even though the defendant was not properly advised of the penalties for his failure to submit to the test?

In construing a statute, this Court should give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. Seals v. State, 23 S.W.3d 272, 276 (Tenn. 2000). This Court must examine the natural and ordinary meaning of the statutory language within the context of the entire statute, without forced or subtle construction that would extend or limit its meaning. State v. Goodman, 90 S.W.3d 557, 563 (Tenn. 2002). This Court should seek to give effect to statutes as a whole, avoiding constructions that render some parts of a statute void, inoperative, or without effect. State v. Mateyko, 53 S.W.3d 666, 675 (Tenn. 2001). Issues of statutory construction are questions of law, which we review *de novo* without a presumption of correctness. State v. Morrow, 75 S.W.3d 919, 921 (Tenn. 2002).

The statute, Tennessee Code Annotated section 55-10-406(a)(2) (2000), in pertinent part, provides:

> Any law enforcement officer who requests that the driver of a motor vehicle submit to a test pursuant to this section for the purpose of determining the alcoholic or drug content of the driver's blood shall, prior to conducting such test, advise the driver that refusal to submit to such test will result in the suspension of the driver's operator's license by the court and, if such driver is driving on a revoked, suspended or cancelled license, when the person's privilege to do so is cancelled, suspended or revoked because of a conviction . . . , that the refusal to submit to such test will, in addition, result in a fine and mandatory jail or workhouse sentence. The court having jurisdiction of the offense for which such driver was placed under arrest shall not

have the authority to suspend the license of a driver who refused to submit to the test
if the driver was not advised of the consequences of such refusal.

(Emphasis added)

The portion highlighted is the language added by the 2000 amendment. Tennessee Code Annotated section 55-10-406(a)(3) (2000) provides the penalties for various categories of offenders and includes a two-year license suspension for defendants with a prior DUI conviction. The prior act provided a one-year suspension for this category.

It appears that this is the first appellate review of the issues presented under the changes made to the statute, Tennessee Code Annotated section 55-10-406, by the amendments of 2000.

The 2000 amendment contained in section 55-10-406(a)(2) provides for criminal penalties in the event that the violator is driving on a revoked, suspended, or cancelled license. The language requiring advice to the suspect driver that failure to submit to the requested test will result in suspension of driver's license remains intact and unchanged. In like manner, the language barring suspension of driver's license when the consequences of refusal are not given remains unchanged.

Of further significance are the changes implemented by section 55-10-406(a)(3) (2000), which provides penalties for various categories of offenders and includes a two-year license suspension for defendants with a prior DUI conviction. The prior act provided for only a one-year suspension. Thus, the first issue we confront is whether an inaccurate warning concerning the length of suspension of driver's license amounts to a failure to advise of the consequences of refusal to submit to the requested test.

The operative and unchanged statutory language has been previously construed, and we avail ourselves of those precedents in our analysis.

State v. Huskins, 989 S.W.2d 735 (Tenn. Crim. App. 1998), dealt with a defendant who voluntarily submitted to a blood test without the benefit of any admonishment of the consequences of a refusal. The defendant's attempt to suppress the test results was denied on the basis that subsection (a)(2) of Tennessee Code Annotated section 55-10-406 is not intended as a rule of exclusion when its provisions are not followed. In construing the statutory meaning we stated:

> The clear purpose of the admonition requirement is to warn drivers of the consequences of failing to comply with the implied consent law. If a driver has been so warned yet refuses a blood alcohol test, his driver's license is subject to suspension. The warning puts him on notice of that consequence.

Id. at 737.

The implied consent warning has been deemed adequate even though it fails to warn the driver of all significant consequences of refusing to take the test. State v. Kain, 24 S.W.3d 816, 819 (Tenn. Crim. App. 2000). In construing the pre-2000 amended statute, we note that: "A common sense reading of this statute is that the word 'consequences,' as utilized in the second sentence of §

55-10-406(a)(2), refers to suspension of the operator's license, which is required by the first sentence of this section." Id. at 820.

The defendant in State v. Ann Elizabeth Martin, No. E1999-01361-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 693 (Tenn. Crim. App., at Knoxville, Sept. 8, 2000), advanced the argument that the use of the plural "consequences" in the statute required an officer to advise a defendant of all possible consequences of refusal to take the test. We rejected that argument and stated that "the statute requires only that an officer advise a suspect that if the suspect refuses he may have his license suspended." Id. at *11.

A state can compel a suspect to submit to a chemical test without violating any constitutional right so long as it is supported by probable cause and the means employed in testing are reasonable. Schmerber v. California, 384 U.S. 757, 770-72, 86 S. Ct. 1826, 1835-37, 16 L. Ed. 2d 908 (1966). The State of Tennessee has chosen to adopt a policy through its enactment of the implied consent law which prohibits law enforcement officers from administering a test without the motorist's consent to avoid potentially violent confrontations between citizens and officers. State v. Humphreys, 70 S.W.3d 752, 761 (Tenn. Crim. App. 2001). The right to refuse the test is statutory and is not absolute. The statute provides that refusal will result in a suspension of the suspect's driver's license if the suspect is warned of this eventuality. See Tenn. Code Ann. § 55-10-406(a)(2). The statute has grown more complex by the addition of differing periods of suspension for various categories of offenders. As an unintended result, warnings of the possible consequences of refusal to submit to testing are now cumbersome, confusing, and fraught with potential for error in the precise enumeration of the possible terms of license suspension.

In the instant case, the defendant was advised that his driver's license would be suspended for a period of one year when, in reality, due to the defendant's status as having a prior DUI conviction, the period of suspension would be two years. The fact remains that the defendant was advised that his driver's license would be suspended, and he refused the test with this knowledge. We therefore hold that the officer's advice that a suspension of driver's license would result from the defendant's refusal was adequate warning of the consequences. Any additional explanation of the consequences of refusal would be gratuitous on the officer's part. Accordingly, we reverse the trial court's dismissal of count two, the violation of the implied consent law.

The State next contends that it would be improperly limited by the trial court in arguing to the jury the fact that the defendant refused the breath test with knowledge that his driver's license would be suspended.

It is important to note that the trial court's limitations of the State's argument was only to bar an argument that the defendant "knew his license would be suspended if he refused the test." The trial court specifically approved the use of T.P.I. Criminal Jury Instruction 38.04, which states:

> If you find from the proof that the defendant was offered and refused to submit to a
> test for the purpose of determining the alcohol or drug content of his blood and that
> the law enforcement officer advised the defendant that refusal to submit to such a test

-4-

will result in suspension of his operator's license, then such refusal is not sufficient standing alone and by itself to establish the guilt of the defendant, but it is a fact which, if proved, may be considered by you in light of all other proved facts in deciding whether the defendant is guilty or not guilty. The weight to which such a circumstance is entitled and whether or not such conduct shows a consciousness of guilt are matters for your determination.

Having ruled that the penalty for refusal was inappropriate, the trial court then concluded that the defendant could not "know" the consequence would be the loss of driver's license.

It is a well settled proposition of law that refusal to submit to a blood or chemical test is admissible as probative on the issue of guilt for DUI offenses. State v. Frasier, 914 S.W.2d 467, 473 (Tenn. 1996); State v. Morgan, 692 S.W.2d 428, 430 (Tenn. Crim. App. 1985); State v. Smith, 681 S.W.2d 569, 570 (Tenn. Crim. App. 1984). This Court has previously refused to hold that admissibility of a driver's refusal to submit to a blood alcohol test is conditional upon the State's total compliance with the implied consent law. State v. Dennie Ray Loden, No. 03C01-9311-CR-00380, 1995 Tenn. Crim. App. LEXIS 46, at *7 (Tenn. Crim. App., at Knoxville, Jan. 19, 1995).

The concluding remarks in the trial court's written memorandum opinion and order simply state, "the jury has the right to consider whether to infer guilt or to not infer guilt from the refusal when deciding whether the defendant was driving under the influence." However, the trial court also barred the State "from arguing that the defendant 'knew he would lose his license if he refused to submit to such a test' or statements of similar meaning." This restriction ignores the fact that the defendant was advised that by refusing the test he was placing his driver's license at risk of suspension. This is true regardless of the inaccuracy of the term of the suspension, and it served to put the defendant on notice of consequences. Thus, the defendant's refusal was made in light of that knowledge and should be allowed as fair game for argument, permitting the jury to draw such inferences as they deem proper in a charge of DUI.

For the foregoing reasons, we reinstate count two of the indictment, the violation of implied consent, and we remand with instructions that the State not be precluded from argument that the defendant knew suspension of license was the sanction for refusal.

_____
JOHN EVERETT WILLIAMS, JUDGE

-5-