# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 20, 2014 Session

## STATE OF TENNESSEE v. DARRYL ALAN WALKER

**Appeal from the Criminal Court for Greene County**
**No. 12CR183    John F. Dugger, Jr., Judge**

———————————————

**No. E2013-01914-CCA-R3-CD - Filed August 8, 2014**

———————————————

Darryl Alan Walker ("the Defendant") was convicted by a jury of driving under the influence ("DUI") and unlawfully carrying another person on a motorcycle. Following a sentencing hearing, the Defendant received a total effective sentence of eleven months and twenty-nine days, suspended to supervised probation after the service of sixty days. In this direct appeal, the Defendant asserts that the trial court erred in denying his motion to suppress the results of a warrantless mandatory blood alcohol test, arguing that the mandatory blood withdrawal provision of the implied consent statute is unconstitutional and that the term "injury" within that provision is unconstitutionally vague. The Defendant also asserts that the trial court erred in denying his motion to suppress certain statements he made to police. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, SP. J., delivered the opinion of the Court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Jonathan Sevier Cave, Greeneville, Tennessee, for the appellant, Darryl Alan Walker.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; C. Berkeley Bell, District Attorney General; and Cecil Mills, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Greene County Grand Jury indicted the Defendant on one count each of driving under the influence and unlawfully carrying another person on a motorcycle. Prior to trial, the Defendant filed a motion to suppress both the results of the blood alcohol test and certain statements he made to police.

*Suppression Hearing*

At the suppression hearing, Trooper Sollie Rabun testified that he was working as a state trooper with the Tennessee Highway Patrol on November 20, 2011, when he was dispatched to the scene of a crash. When he arrived at the scene of the crash, around 6:00 p.m., there were already multiple ambulances and paramedics present. The only vehicle involved in the crash was a motorcycle. At the time Trooper Rabun arrived, paramedics were already in the process of transporting the driver, whom he later learned was the Defendant, to the hospital for medical attention. However, the passenger on the motorcycle at the time of the crash, Leann Pierce, was still at the scene. When Trooper Rabun spoke with Pierce, he noticed that Pierce "had an odor of alcoholic beverage on her person and that she had what appeared to [be] a busted lip, she had blood around her mouth, and also had scrape marks . . . on her arms."

Trooper Rabun testified that the motorcycle was damaged and appeared to have driven off the road into a ditch. After he spoke with Pierce and the paramedics still on the scene, he called a tow truck to remove the motorcycle from the ditch. He estimated that the tow truck took between twenty and thirty minutes to arrive. When the tow truck did arrive, the driver was alone, and Trooper Rabun had to assist the driver in getting the motorcycle on the truck. Trooper Rabun testified that he was on the scene for a total of "approximately an hour or more."

After leaving the scene, Trooper Rabun went to Laughlin Memorial Hospital, where the Defendant had been taken for medical attention. It took approximately twenty minutes for him to drive to the hospital. When Trooper Rabun arrived, he noticed that the Defendant had a cut on his lip, and hospital staff already were preparing his lip to receive stitches. Trooper Rabun was wearing his uniform when he arrived at the hospital. Trooper Rabun testified, "I told [the Defendant] that I was investigating the crash . . . and I asked him what happened." The Defendant stated that "he had missed the curve and ran into the ditch." While he was speaking with the Defendant, Trooper Rabun noticed that the Defendant had "an obvious odor of alcoholic beverage coming from his breath [and] that his eyes were

bloodshot." He further testified that the Defendant "was having trouble staying awake and keeping up with the conversation," and Trooper Rabun "had to repeat things on multiple occasions." Trooper Rabun later left the room so that hospital staff could put stitches in the Defendant's lip. After the Defendant's lip was stitched up, Trooper Rabun placed him under arrest for DUI.

Trooper Rabun testified that, when he placed the Defendant under arrest, he read him the implied consent form. Trooper Rabun read aloud "exactly what was on the page." The implied consent form, entered into evidence without objection, was signed by the Defendant indicating that he consented to providing a blood sample for testing. The implied consent form, designated "for use in mandatory test cases per [Tennessee Code Annotated section] 55-10-406(f),"[1] contained the statement, "[U]nder [Tennessee Code Annotated section] 55-10-406(f) I must obtain a chemical test to determine the alcohol and/or drug content of your blood. If you refuse such test I will obtain a sample of your blood either with or without your consent." Trooper Rabun signed the form at 8:05 p.m., which he testified was also the time that he placed the Defendant under arrest. Trooper Rabun testified that, in order to secure a search warrant at that time, he would have first needed to call a supervisor to obtain a search warrant to fill out and then to locate a magistrate to approve it.

On cross-examination, Trooper Rabun agreed that he did not mention in his report the injuries he observed on Pierce. At the time Trooper Rabun spoke with the Defendant in the hospital, the Defendant already had been given an anesthetic. However, Trooper Rabun clarified that it was merely a "local anesthetic given by needle into his . . . lip." According to Trooper Rabun, the Defendant stated that he had consumed one beer that evening. When asked whether the Defendant was free to leave at the time of the questioning, Trooper Rabun responded, "Not until I questioned him about the accident." Trooper Rabun admitted that he did not read the Defendant his Miranda rights. He confirmed that he was wearing a weapon at the time of the questioning.

On redirect examination, Trooper Rabun testified that the Defendant also told him that he had been coming from the "the County Line Bar" that evening. Trooper Rabun identified a document as the Tennessee Bureau of Investigation ("TBI") report indicating the results of the blood alcohol analysis performed on the blood sample provided by the Defendant. The report indicated that the Defendant's blood alcohol content was .15 at the time the sample was taken.

---

[1]In its current version, this provision is now codified at Tennessee Code Annotated section 55-10-406(d)(5)(A) (Supp. 2013).

In considering the Defendant's motion to suppress the results of the blood alcohol test, the trial court concluded that the mandatory implied consent form did "show some coercion." However, the trial court considered the totality of the circumstances and concluded that "it was not reasonable for [Trooper Rabun] to leave and go try to find a judge to try and write up a warrant." Based on that conclusion, the trial court denied the Defendant's motion to suppress the results of the blood alcohol analysis.

*Jury Trial*

At trial, Trooper Rabun testified consistently with his testimony in the suppression hearing. Regarding the events at the hospital, Trooper Rabun testified that, when he arrived at the hospital, the Defendant "was being treated by emergency room personnel" who were cleaning his lip and preparing the Defendant for stitches. Trooper Rabun clarified that, while they were working on the Defendant, he "was just standing in the room trying to kind of stay out of the way and let them do what they needed to do." When hospital staff "moved away from [the Defendant] to prepare to put the stitches in and get the equipment necessary," Trooper Rabun "stepped forward and started speaking with [the Defendant]." When he asked the Defendant "what happened" during the accident, the Defendant "stated that they were traveling on Oasis Road and missed the curve and ran into the ditch." The Defendant also stated that he was the driver.[2] Regarding the consent form, Trooper Rabun testified that, after he read the form to the Defendant, "he agreed to consent to the test and he did sign stating that." Trooper Rabun had a lab tech at the hospital draw a sample of the Defendant's blood, and he submitted that blood to be tested.

Melanie Carlisle, a forensic scientist with the TBI, testified that she performed a blood toxicology analysis on the Defendant's blood sample. Carlisle identified a copy of her report summarizing the results of her analysis, and the report was admitted into evidence without objection. Carlisle testified that the report showed the Defendant's blood alcohol content to be .15 at the time the sample was taken.

At the conclusion of the State's proof, the defense moved for a judgment of acquittal, and the trial court denied the motion. The Defendant chose not to testify on his own behalf and submitted no proof. Following deliberations, the jury found the Defendant guilty of DUI and unlawfully carrying a person on a motorcycle. The trial court sentenced the Defendant to a total effective sentence of eleven months and twenty-nine days, suspended to supervised probation after the service of sixty days. The Defendant timely filed a motion for new trial which the trial court subsequently denied. In this direct appeal, the Defendant asserts that

---

[2] At trial, Trooper Rabun did not testify regarding the Defendant's other statements testified to in the suppression hearing.

the trial court erred in denying his motion to suppress the results of a warrantless mandatory blood alcohol test, arguing that the mandatory blood withdrawal provision of the implied consent statute is unconstitutional and that the term "injury" within that provision is unconstitutionally vague. The Defendant also asserts that the trial court erred in denying his motion to suppress his statements to Trooper Rabun.

## Analysis

### *Motion to Suppress Blood Sample*

The Defendant first argues that the trial court erred when it denied his motion to suppress the evidence arising from a blood sample provided by the Defendant pursuant to the mandatory provision of the implied consent statute. See Tenn. Code Ann. § 55-10-406(f)(1) (Supp. 2011). Specifically, the Defendant asserts that the mandatory blood draw provision is unconstitutional in that it violates the right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution. In support of this argument, the Defendant cites a recent opinion of the United States Supreme Court, Missouri v. McNeely, ___ U.S. ___, 133 S.Ct. 1552 (2013). Furthermore, the Defendant argues that the term "injury" contained in the mandatory provision of the implied consent statute is unconstitutionally vague.

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 630 (Tenn. 1997). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Likewise, "[q]uestions about witness credibility and 'resolution of conflicts in the evidence are matters entrusted to the trial judge.'" State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001) (quoting Odom, 928 S.W.2d at 23). "Our review of a trial court's application of law to the facts, however, is conducted under a de novo standard of review." Walton, 41 S.W.3d at 81 (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999)); Yeargan, 958 S.W.2d at 629. Finally, we note that the prevailing party on a motion to suppress "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (citing Odom, 928 S.W.2d at 23; State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000)).

In McNeely, the United States Supreme Court reiterated that "a compelled physical intrusion beneath [a defendant's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation" constitutes a search under the Fourth Amendment. McNeely, 133 S.Ct. at 1558; see also Schmerber v. California, 384 U.S. 757, 770 (1966). However, the Court recognized that the exigency of "the imminent destruction of evidence" may give rise to an exception to the warrant requirement regarding nonconsensual blood draws in the context of drunk driving cases. McNeely, 133 S.Ct. at 1558; see also State v. Humphreys, 70 S.W.3d 752, 760-61 (Tenn. Crim. App. 2001). Indeed, as the Court noted, "a result of the human body's natural metabolic processes" is that "the alcohol level in a person's blood begins to dissipate once the alcohol is fully absorbed and continues to decline until the alcohol is eliminated." McNeely, 133 S.Ct. at 1560 (citing Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 623 (1989); Schmerber, 384 U.S. at 770-71). That possibility notwithstanding, the Court declined to adopt a per se exigency for nonconsensual blood testing in all drunk driving cases and instead held that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." Id. at 1563. In doing so, the Court noted that "some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." Id. at 1561. However, the Court maintained that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." Id.

In affirming the totality of this circumstances approach, the McNeely Court relied heavily on Schmerber v. California, 384 U.S. 757 (1966). In Schmerber, as in the instant case, the defendant was arrested for driving under the influence of alcohol while he was at the hospital receiving treatment that resulted from an automobile accident. Id. at 758. While at the hospital, a police officer took a sample of the defendant's blood over the defendant's objection. Id. at 759. There, the Court applied the totality of the circumstances approach and held that the warrantless blood draw was admissible because the delay necessary to obtain a warrant would have led to the dissipation of the alcohol in the defendant's bloodstream and, thus, to the destruction of evidence. Id. at 770. In support of that conclusion, the Court noted that "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." Id. at 770-71.

In the instant case, Trooper Rabun arrived on the scene after the Defendant had been transported to the hospital. Trooper Rabun had to stay on the scene in order to interview Pierce and to aid the tow truck driver in removing the motorcycle from the ditch. He traveled to the hospital, and, although he was able to speak with the Defendant when he arrived, his

investigation further was delayed by the necessity of stitching up the wound that the Defendant had sustained in the accident. By the time he was able to fully question the Defendant, over two hours had passed since the time of the accident. Indeed, Trooper Rabun arrived at the scene of the accident around 6:00 p.m. and arrested the Defendant at 8:05 p.m. Trooper Rabun also testified that he would have encountered considerable further delay in obtaining a search warrant and locating a magistrate to approve that warrant. These circumstances "ma[de] obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream . . . support[ed] an exigency justifying a properly conducted warrantless blood test." McNeely, 133 S. Ct. at 1561. Therefore, the results of the blood alcohol analysis were admissible under the exigency exception to the warrant requirement, irrespective of the validity of the Defendant's consent under the implied consent statute.[3]

Alternatively, we also note that nothing in the record suggests that the Defendant expressly refused to consent to providing a sample. As this Court has stated:

> Under the express provisions of Tenn. Code Ann. § 55-10-406, "[a]ny person who drives any motor vehicle in the state is deemed to have given consent" to a test for blood alcohol or drug content, provided that the law enforcement officer has "reasonable grounds to believe such person was driving under the

---

[3] We can find no authority, and indeed the Defendant cites us to no authority, to support his claim that our implied consent statute prohibits a lawful search based upon the exigent circumstances exception to the warrant requirement independent of consent. Because it is not supported by citation to authority, the Defendant has waived this argument. See Tenn. Ct. Crim. App. R. 10(b). Furthermore, this Court has held that "a motorist's right to refuse to submit to a breath test under Tennessee's implied consent law is not a constitutional right" which leads to the exclusion of evidence otherwise constitutionally obtained. Humphreys, 70 S.W.3d at 760-61. The exigency exception to the warrant requirement is an exception separate and distinct from the voluntary consent exception. State v. Shirley Larhonda Gagne, No. E2009-02412-CCA-R3-CD, 2011 WL 2135105, at *7 (Tenn. Crim. App. May 31, 2011). Indeed, this Court has specifically recognized that the exigency created by diminishing blood alcohol content "falls within the exigent circumstances exception to the warrant requirement" and creates a justification for a search *"[i]n addition"* to the implied consent statute. Humphreys, 70 S.W.3d at 760-61 (emphasis added); see also State v. Michael A. Janosky, No. M1999-02574-CCA-R3-CD, 2000 WL 1449367, at *4 (Tenn. Crim. App. Sept. 29, 2009). Therefore, "[t]he Implied Consent statute's refusal provision does not affect the constitutional and statutory basis for performing a warrantless search of a motorist's blood." Gagne, 2011 WL 2135105, at *9. The purpose of the implied consent statute is "'not to carve out a rule of exclusion when the provisions . . . have not been followed,'" and non-compliance with the requirements of the implied consent statute, alone, "does not warrant suppression of the Defendant's blood alcohol test results at trial." State v. Kelly A. Hancock, No. 0C01-9804-CC-00191, 1999 WL 298219, at *7 (Tenn. Crim. App. May 12, 1999) (quoting State v. Huskins, 989 S.W.2d 735, 738 (Tenn. Crim. App. 1998)). We also note that our legislature recently amended the implied consent statute to clarify that refusal to consent under that statute does not prohibit a search otherwise authorized by a search warrant or court order. See Tenn. Code Ann. § 55-10-406(d)(1) (Supp. 2013).

influence of an intoxicant or drug." Tenn. Code Ann. § 55–10–406(a)(1). Thereby, anyone who exercises the privilege of operating a motor vehicle in this state has consented in advance to submit to a breath alcohol test. Indeed, by virtue of the provisions of Tenn. Code Ann. § 55-10-406(a)(1), our legislature has declared that consent of all motorists is implied. Therefore, if probable cause exists to believe that (1) the suspect motorist has consumed intoxicating liquor and (2) evidence of the motorist's intoxication will be found if the blood is tested, see Schmerber, 384 U.S. at 768-72, 86 S.Ct. at 1834–36; see also State v. Greene, 929 S.W.2d 376, 380 (Tenn. Crim. App. 1995), it is unnecessary for law enforcement officers to obtain the voluntary consent of an individual motorist before administering a breath test for alcohol concentration level. Id.

Humphreys, 70 S.W.3d at 761. Indeed, the implied consent statute does not require an officer to inform an accused of his right to refuse. Id. at 762. Rather, "[t]he clear purpose of the admonition requirement is to warn drivers of the consequences of failing to comply with the implied consent law," and it is "not a Miranda-type warning that the driver is not compelled to give evidence against himself." Huskins, 989 S.W.2d at 737; see also State v. Collins, 166 S.W.3d at 727 ("[T]he purpose of the implied consent statute is not to allow motorists suspected of driving under the influence to make an 'informed choice' about whether to take an alcohol or drug test; rather, it is to advance the State's objective of keeping intoxicated drivers off the roadways."). In fact, the implied consent statute requires an officer to inform the accused only that his license will be suspended if he refuses, nothing more. Collins, 166 S.W.3d at 727; Humphreys, 70 S.W.3d at 762. Indeed, "only a motorist's 'express refusal' affects the admissibility of a drug or alcohol screen" under the implied consent statute, and "the absence of his subjective consent does not affect such a test's admissibility." Gagne, 2011 WL 2135105, at *9; see also Humphreys, 70 S.W.3d at 762.

Because consent occurs at the point that a driver undertakes the privilege of operating a motor vehicle in the State of Tennessee, not at the point the implied consent form is read, the Defendant's argument that his consent was rendered involuntary by the potentially coercive nature of the mandatory implied consent form read to him by Trooper Rabun is misplaced. Rather, at the time the implied consent form is read, "voluntary consent is unnecessary as consent has already been obtained by the act of driving the motor vehicle upon the public roads of this state." Humphreys, 70 S.W.3d at 752. Moreover, we note that, in Humphreys, this Court upheld the admissibility of a blood test under the implied consent statute when the officer did not read an implied consent form to the defendant and told the defendant that the law "requir[ed]" him to provide a sample. See id. at 759. In the instant case, the form that Trooper Rabun read to the Defendant accomplished the requirement of informing the Defendant that his license could be suspended if he refused to provide a

sample. As in Humphreys, there was no further requirement that the Defendant be made aware of his right to refuse to provide a sample. Because there is no proof that the Defendant refused to submit to the test, his implied consent remained valid, and his contention that his consent was involuntary is without merit. Therefore, we also hold that, in addition to the exigency discussed herein, the results of the blood alcohol test were alternatively admissible under the implied consent statute.

Based on the foregoing, we hold that the trial court properly denied the Defendant's motion to suppress the results of the blood alcohol test. Accordingly, we need not assess the constitutionality of the mandatory blood draw provision of the implied consent statute or the vagueness of the term "injury" contained therein. The Defendant is entitled to no relief on this issue.

*Motion to Suppress the Defendant's Statement*

The Defendant next asserts that the trial court erred when it denied his motion to suppress his statement made to Trooper Rabun at the hospital. According to the Defendant, his statements to Trooper Rabun were inadmissible because they were made absent Miranda warnings.

Both the Fifth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee a criminal defendant's fundamental constitutional right against compelled self-incrimination. In accordance with that right, a suspect

> must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

Miranda v Arizona, 384 U.S. 436, 478-79 (1966); see also State v. Dailey, 273 S.W.3d 94, 101-02 (Tenn. 2009). However, the requirements of Miranda only apply to a suspect who has been "taken into custody or otherwise deprived of his freedom by the authorities in any significant way." Miranda, 384 U.S. at 478; Daily, 273 S.W.3d at 102. Therefore, our first step in any Miranda analysis is to determine whether the defendant was in custody at the time

of questioning.

In State v. Anderson, 937 S.W.2d 851 (Tenn. 1996), our supreme court held that the applicable test for determining whether a suspect is in custody for the purposes of Miranda is "whether, under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with a formal arrest." Id. at 855. A seizure of a lesser degree than a formal arrest, such as a temporary investigative detention or a traffic stop, does not constitute custody within the meaning of Miranda. Maryland v. Shatzer, 559 U.S. 98, 113 (2010). In establishing the totality of the circumstances approach, the Anderson court listed several factors relevant to the analysis including, but not limited to: (1) the time and location of the interrogation; (2) the duration and character of the questioning; (3) the number of police officers present; (4) any limitation on movement or other form of restraint imposed on the suspect during the interrogation; (5) any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; (6) the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and (7) the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. Anderson, 937 S.W.2d at 855. Determining whether a suspect was in custody is a "very fact specific inquiry" for which the trial court is best suited. Id. As such, "[t]his Court is bound by the trial court's determination that the Defendant was not in custody at the time of questioning unless it 'clearly appear[s] that there ha[s] been an abuse of discretion and a violation of the rights of the accused.'" State v. Smith, 868 S.W.2d 561, 570 (Tenn. 1993) (quoting Childs v. State, 584 S.W.2d 783, 788 (Tenn. 1979)).

We first note that, although the Defendant filed a motion to suppress his statements, the Defendant's argument during the hearing on the motion to suppress was devoted exclusively to the admissibility of the blood alcohol test, and he made no argument regarding his statements. As such, the record contains no ruling by the trial court on this issue, and no findings by the trial court were made as to whether the Defendant was in custody within the meaning of Miranda. Tennessee Rule of Appellate Procedure 36(a) states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." This Court has stated that, "[w]hen the defendant fails to bring a motion to the attention of the trial judge and have the trial judge rule upon the motion prior to trial, the defendant waives the issues raised in the motion." State v. Aucoin, 756 S.W.2d 705, 709 (Tenn. Crim. App. 1988) (citing State v. Burtis, 664 S.W.2d 305, 310 (Tenn. Crim. App. 1983)). In other words, "[t]he mere filing of a motion to suppress is not sufficient to raise an issue for the court to decide. The proponent must bring the motion to the attention of the trial judge and obtain a ruling thereon; otherwise the issue is waived." State v. Marvin

K. Ferguson, No. 03C01-9406-CR-00235, 1997 WL 401825, at *2 (Tenn. Crim. App. July 17, 1997); see also State v. Charles M. Thomas, No. M2000-02576-CCA-R3-CD, 2002 WL 122930, at *1 (Tenn. Crim. App. Jan. 23, 2002) (finding that the defendant waived the issue when he raised it in a motion to suppress but "failed to pursue" the motion prior to trial). Based on the foregoing, the Defendant waived consideration of the Miranda issue when he failed to secure a ruling on his motion from the trial court. Accordingly, the Defendant is entitled to no relief on this issue.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____

JEFFREY S. BIVINS, SPECIAL JUDGE