**Charles KING, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee,
at Nashville.

Feb. 15, 1980.

R. Price Nimmo, Nashville, for appellant.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, D. Vance Martin, Asst. Dist. Atty. Gen., Ashland City, for appellee.

## OPINION

DAUGHTREY, Judge.

The appellant-defendant, Charles King, was indicted for second degree murder after his vehicle collided head-on with that of an Ashland City woman, injuring occupants of both vehicles and killing a passenger in King's automobile. The jury convicted the defendant of involuntary manslaughter and set his sentence at nine months imprisonment. On appeal he challenges (1) the admissibility of a blood-alcohol test based on a blood sample taken from him soon after the collision, and (2) the qualifications of the toxicologist who ran the blood-alcohol test. We find no error and affirm the conviction.

■ The defendant raises four objections to the admissibility of the test results, only two of which were raised at trial and included in the motion for a new trial. They are the only two issues we can consider. Tennessee Rules of Appellate Procedure Rule 3(e).

■ There was no legitimate dispute at trial concerning the defendant's words of consent to the state trooper who supervised the blood sample taken by a registered nurse in the emergency room of a Nashville hospital. The complaint focuses instead on the law enforcement officer's failure "to explain the purpose of the taking the blood from [the defendant . . . and to] explain that he had no obligation to let [the trooper] take the blood." The defendant argues that the officer thus violated the procedure mandated by T.C.A. § 59–1045, and that the results of the test should not have been introduced into evidence.

Tennessee Code Annotated, § 59–1045 provides:

Any person who drives any motor vehicle in the State of Tennessee shall be deemed to have given his or her consent to a test for the purpose of determining the alcoholic or drug content of his or her blood; provided that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person to having been driving, while under the influence of an intoxicant or drug . . . .. If such person having been placed under arrest and thereafter having been requested by a law enforcement officer to submit to such test, refuses to submit, the test shall not be given; but the Commissioner of the Department of Safety shall suspend his or her license.

This statute gives rise to an implied "consent" by all licensed drivers to testing procedures such as the one used here. The law does require that under certain circumstances law enforcement officials must honor the refusal of a driver to undergo testing, with a corollary penalty provided for such refusal. However, nothing in the statute requires that a driver be given *Miranda*-like admonitions prior to the drawing of a blood sample, in order to sustain a valid "consent." Nor do we find any authority for such a procedure in the case law of this state. We therefore conclude that there was no error in the introduction of the blood test results. See generally *Fee v. State*, 497 S.W.2d 748 (Tenn.Cr.App.1973).

■ The toxicologist testified that King's blood alcohol level was 0.23%, more than double the level (0.10%) at which intoxication is presumed under T.C.A. § 59–1047. On cross-examination, the toxicologist testified in great detail concerning the gas chromatograph, the instrument he used to analyze King's blood alcohol. His testimony evinces his thorough understanding of the analysis procedure and the method by which the chromatograph detects the level of blood alcohol. Nevertheless, the defendant's attorney moved to strike the toxicologist's testimony at trial when the witness was unable to assign a short-hand "name" to the principle behind gas chromatography.* The trial court overruled the objection and we find no error in this ruling. The record amply establishes the toxicolo-

---

* Apparently defense counsel was looking for a term such as "Boyles Law," "Einstein's Theory," or the like. He asked the witness if he was familiar with the term "Henry's Law," which, it later developed, has no relevance to blood analysis by use of the gas chromatograph.

gist's familiarity with the analytic instrument he used and with the scientific principles underlying its use. We therefore hold that there was a sufficient basis upon which to permit his testimony as that of an expert. See generally *Pruitt v. State*, 216 Tenn. 686, 393 S.W.2d 747 (1965).

The judgment of the trial court is affirmed.

BYERS and SCOTT, JJ., concur.