**STATE of Tennessee, Appellee,**

v.

**Donnie E. BLACKWOOD, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 7, 1986.

Opinion on Petition to Rehear
Feb. 21, 1986.

Permission to Appeal Denied by
Supreme Court April 28, 1986.

Thomas W. Hardin, Columbia, for appellant.

W.J. Michael Cody, Atty. Gen. and Reporter, Kimberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Bobby Sands, Robert Sanders, Asst. Dist. Attys. Gen., Columbia, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

Donnie E. Blackwood was convicted by a Maury County jury of five counts of vehicular homicide as the proximate result of his intoxication. After a sentencing hearing the trial judge imposed concurrent six-year sentences.

This case resulted from a traffic accident which occurred shortly before 1:00 a.m. on June 19, 1983, on Highway 99 near Columbia, Tennessee. The accident was occasioned by the defendant's westbound pickup truck crossing the yellow dividing line and after striking an automobile and trailer driven by Ronnie Hanvy colliding head-on with another eastbound vehicle which was occupied by the Gowan-Cooper families. An eastbound vehicle driven by James Smith received minor damage when it struck the rear of the Gowan-Cooper vehicle immediately after its collision with the defendant's truck. Five of the six occupants of the Gowan-Cooper vehicle died from injuries received in this accident.

Shortly after the accident, the defendant was observed sitting in the floorboard with his back to the dashboard and with his arm resting on the seat of the passenger side of the truck. He was overheard to curse and ask the other occupant to get off his leg. This other occupant of the truck who was later identified as Sammy Brown was found slumped against the driver's door with his posterior near the middle of the seat. The door on the driver's side of the truck was jammed shut but the passenger door was standing open. The defendant was next seen partly out of the truck with his torso on the ground and his legs in the truck. Shortly thereafter the defendant had completely exited the truck and was lying on his back alongside the vehicle. He remained in this position until moved by the ambulance attendants.

Both the defendant and Brown smelled strongly of alcohol. Two beer cans were recovered from the floorboard of the truck. One of the cans, a Miller, was unopened and in a small paper sack. The other can, a Budweiser Lite, was open and still contained some liquid. Both cans were cool to the touch.

The proof established that during the early evening hours the defendant drove his truck to Brown's home where he picked up Brown. The two men spent the rest of the night together during which time they each consumed several beers with the defendant drinking Miller and Brown drinking Budweiser Lite.

Brown testified that they left the Blue Room Lounge in Tullahoma between 11:15 and 11:30 p.m. and began the 65 to 70 mile trip home. He described the defendant's driving over the crooked roads as fine. Brown said he went to sleep about the time they crossed the Bedford County line. When he awoke he was in the floorboard of the truck with his legs jammed into the glove box. In an effort to relieve the pain in his hip, he crawled up onto the seat where he could straighten his leg. He denied driving or ever having the truck keys.

The defendant testified that he gave the keys to Brown shortly after they arrived at the lounge. He stated that he could not recall leaving the lounge and could only remember awakening at some point when Brown returned to the truck and handed him a beer. He then went back to sleep.

The defendant and Brown were taken to the emergency room at the Maury County Hospital for treatment of their injuries. At the request of the investigating officers, hospital personnel took blood samples from both men. Subsequent testing established that the defendant's blood alcohol level was .17 gram percent at 2:15 a.m. Brown registered .13.

The first five issues raised by the defendant challenge the admissibility of the blood test results. In this multifarious attack the defendant asserts: (1) that the implied consent statute was not applicable because the requesting officer did not have reasonable grounds to believe the defendant was driving; (2) there was no probable cause for his arrest; (3) he was incapable of knowingly and intelligently giving consent; (4) the blood test was the product of an illegal search and seizure; and (5) the introduction of the test result violated his right against self incrimination.

After careful consideration we find no merit in any of these arguments and have concluded that this blood test result was properly admitted.

■ T.C.A. § 55–10–406(a) provides, in pertinent part, that a person who drives a motor vehicle in the State of Tennessee shall be deemed to have given his or her consent to a test for the purpose of determining the alcohol or drug content of his or her blood *if the test is administered at the direction of a law enforcement officer having reasonable grounds to believe that person has been driving while under the influence of an intoxicant or drug* (emphasis added).

In 1981 the Tennessee General Assembly amended T.C.A. § 55–10–406 by adding subsection (e) which provided:

> Nothing in this section shall affect the admissibility in evidence in criminal prosecutions for aggravated assault or homicide by the use of a motor vehicle only of any chemical analysis of the alcoholic content of the defendant's blood which has been obtained *by any means lawful* without regard to the provisions of this section. (emphasis added)

Intrusions into the human body and the withdrawal of blood for the testing of its alcohol content has been held to be subject to the constraints of the Fourth Amendment. In *Schmerber v. State of California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the Supreme Court held that such testing procedures clearly constitute searches of "persons" and depend antecedently upon seizures of "persons" within the meaning of that amendment.

It is, of course, well settled that one of the exceptions to the requirements of both

a warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). *See also Rippy v. State*, 550 S.W.2d 636 (Tenn. 1977). The sufficiency of the consent depends largely upon the facts and circumstances presented by each particular case. The burden is on the prosecution to prove that the consent was given freely and voluntarily. *State v. McMahan*, 650 S.W.2d 383 (Tenn.Crim.App.1983).

At the suppression hearing Sgt. Robert W. McAdam testified that he was not sure which man was driving so he requested a blood sample from both. In his opinion each was under the influence and one of them had been in physical control of the truck at the time of the accident. The defendant and Brown were being treated in the emergency room when the sergeant arrived at the hospital. He noted that the defendant appeared to be in pain and was complaining about his leg and about being cold. Sgt. McAdam further testified that after he advised both the defendant and Brown of their right to refuse they each consented to the taking of a blood sample.

The defendant did not deny consenting to the test but testified that he did not recall what happened in the emergency room.

In ruling the test results admissible, the trial judge determined that the defendant was capable of consenting and did in fact consent to the taking of the blood sample. Under settled principles, his determination is binding upon the appellate courts if there is any evidence to support it. *State v. Chandler*, 547 S.W.2d 918 (Tenn.1977). We find that the evidence in this case does support the trial court's judgment.

The defendant having consented to its taking, this blood sample was obtained by lawful means and it clearly follows that the test results were admissible in this criminal prosecution for homicide by use of a motor vehicle. T.C.A. § 55-10-406(e).

■ The validity of an arrest is not at issue here since the defendant was not arrested until approximately one month af-ter the blood sample was taken. While at the hospital for treatment of his injuries, the defendant voluntarily authorized the taking. Likewise without merit is defendant's contention that *Miranda*-type advice was required prior to obtaining a valid consent. *King v. State*, 598 S.W.2d 834 (Tenn. Crim.App.1980). *See also Schneckloth v. Bustamonte, supra.*

■ In his next assignment the defendant says the trial court erred in permitting the State toxicologist to testify hypothetically as to defendant's blood level at the time of the accident. He cites as authority *Bailey v. State*, 479 S.W.2d 829 (Tenn. Crim.App.1972), which restates the rule that hypothetical questions may not be based upon assumed facts not in evidence.

In our view the transcript of this witness's testimony does not support the defendant's contention that this rule of law was violated here. Rather the record indicates that on several occasions the toxicologist qualified his answers as pertaining to an average individual. Such responses bear upon the weight rather than the admissibility of that testimony.

Furthermore the record reveals that only one objection was made to this entire line of testimony which was as follows:

Q. So some one hour and a half after the accident and after Mr. Blackwood was under medical supervision and in the—not the custody but under the care of medical personnel, from your test and from your training in this field, would his blood alcohol have been higher or lower at the time of the accident or at the time the blood specimen was collected at 2:15?

MR. HARBIN: Objection.

THE COURT: On what grounds?

MR. HARDIN: There's no way he could know unless he did two (2) tests.

A. That's true unless we know the time that the last drink was taken.

THE COURT: Alright.

In the absence of a contemporaneous objection to proffered evidence, the evidence is competent and any complaint about the admission of such evidence is waived.

*State v. Hopper*, 695 S.W.3d 530 (Tenn. Crim.App.1985).

The next three issues challenge the failure of the trial judge to adequately charge the jury.

■ First, the defendant says the Court should have instructed on expert witnesses in view of the testimony of the toxicologist.

We initially observe that the record fails to reflect where this witness was ever tendered, accepted or identified as an expert. In the previous assignment we dealt with the only objection raised concerning his testimony. The charge as given included the standard instruction dealing with the credibility of witnesses.

At the conclusion of his charge to the jury, the trial judge asked counsel if there were any special requests and there were none. It was incumbent upon the defendant to call the alleged omission to the attention of the trial judge at that time. Having failed to do so, he cannot now predicate error upon the omissions in or meagerness of the charge as given. *See Rule v. Empire Gas Corporation*, 563 S.W.2d 551 (Tenn.1978). *See also East v. State*, 197 Tenn. 644, 277 S.W.2d 361 (1955).

■ Next, the defendant says the Court erred in failing to charge the jury regarding amnesia.

Not only has defendant waived any right to appellate review on this question by his failure to request a charge on amnesia but our review of this record fails to establish a valid issue being raised by the proof on the question of amnesia at the time of the commission of the crime. The substance of defendant's testimony was to the effect that he was asleep prior to and at the time the crime was committed. Thus his inability to remember.

■ Likewise without merit is defendant's complaint that the trial court erred in failing to charge the jury regarding the testimony of an accomplice.

Again, appellate review on this question is barred by the defendant's failure to present a special request when given the opportunity to do so. *See State v. Copeland*, 677 S.W.2d 471 (Tenn.Crim.App. 1984); *Bolton v. State*, 591 S.W.2d 446 (Tenn.Crim.App.1979).

An accomplice is one who knowingly, voluntarily and with common intent unites with the principal offender in the commission of the crime. The test generally applied as to whether or not one is an accomplice is whether the alleged accomplice can be indicted for the offense. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34 (1964); *Conner v. State*, 531 S.W.2d 119 (Tenn. Crim.App.1975).

By its verdict the jury obviously credited Sammy Brown's testimony that the defendant was the driver. Other evidence established that the defendant was the owner of the subject vehicle. The mere fact that Brown was a passenger in the truck at the time of the fatal collision would not make him an accomplice.

■ We find no merit in the defendant's final complaint that the trial judge erred in denying probation and in failing to consider his statement of mitigating factors.

The transcript of the sentencing hearing indicates that the trial court fully considered the relevant evidence in the case including the testimony of character witnesses, the presentence report, other evidence adduced at trial and the argument of counsel. After noting the good character of the defendant, his excellent employment record, his family responsibilities and outstanding army record, the trial judge observed, "It is very seldom that a defendant comes to the court with a record like Mr. Donnie Blackwood has."

On the other hand, the court pointed out the need for deterrence in such cases observing that deaths from drunken driving has approached alarming proportions and calling attention to the fact that in Maury County there had been 725 arrests for D.U.I. within the past 18 months. After reviewing the circumstances leading up to the deaths of the five victims at the hands of a driver clearly under the influence of an intoxicant, the trial judge was unable to

find any exceptional circumstances which would support the granting of probation.

Generally, in cases such as this where a life is taken by an intoxicated motorist, the deterrence factor is a sufficient basis for the denial of probation. *State v. Windhorst*, 635 S.W.2d 706 (Tenn.Crim.App. 1982). In a case involving the death of another person at the hands of the petitioner, exceptional circumstances must be shown in order to support probation. *State v. Garren*, 644 S.W.2d 701 (Tenn.Crim.App. 1983). No exceptional circumstances are present in this case, and the trial judge properly denied probation.

Finding no reversible error, we affirm the convictions.

DUNCAN and BYERS, JJ., concur.

## OPINION ON PETITION TO REHEAR

A courteous and dignified petition for rehearing has been filed by the appellant, Donnie E. Blackwood.

After carefully considering the arguments set forth therein and re-examining the authorities cited, we find the petition to be without merit and it is respectfully denied.