# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 6, 2015

## STATE OF TENNESSEE v. DENNIS SPRAWLING

**Appeal from the Criminal Court for Shelby County**
**No. 1401576     Carolyn W. Blackett, Judge**

_____

## No. W2014-02511-CCA-R9-CD  -  Filed July 5, 2016

_____

Defendant, Dennis Sprawling, was indicted by the Shelby County Grand Jury for one count of driving under the influence of an intoxicant (DUI), one count of driving with a blood alcohol content of more that 0.20% (DUI per se), and one count of reckless driving. A separate count alleged that Defendant had previously been convicted of DUI. In this interlocutory appeal, the appellant, State of Tennessee appeals the Shelby County Criminal Court's order granting  a motion to suppress filed by Defendant. The State claims that the trial court erroneously suppressed Defendant's blood test results because the "arresting officer had both actual and implied consent" to draw a sample of Defendant's blood following Defendant's arrest for DUI. After a thorough review, we affirm the judgment of the trial court.

## Tenn. R. App. P. 9, Interlocutory Appeal; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN, J., joined. ROBERT L. HOLLOWAY, JR., J., filed a concurring opinion.

Herbert H. Slatery III, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the Appellant, State of Tennessee.

Cornelius Bostick, Memphis, Tennessee, for the Appellee, Dennis Sprawling.

# OPINION

## BACKGROUND

*Suppression Hearing*

Lieutenant A.J. Kant of the Memphis Police Department testified that at approximately 2:00 a.m. on April 21, 2013, he was traveling westbound on Union Avenue in Memphis when he observed a 2001 Chevrolet Blazer being driven in an "erratic manner." Lieutenant Kant noted that the vehicle was "weaving between all three westbound lanes" of Union Avenue. Lieutenant Kant followed the vehicle for approximately one mile until it turned "north on Marshall and then made an immediate westbound left turn on Monroe and then made an immediate turn into a parking lot."

Lieutenant Kant stopped the driver, identified as Defendant, as he exited his vehicle. It appeared to Lieutenant Kant that Defendant was intoxicated because Defendant was unsteady on his feet, and he smelled of alcohol. Lieutenant Kant said, "It was obvious that [Defendant] had been drinking." He noted that Defendant was cooperative. Lieutenant Kant called for a unit from the "South Main Station" to meet him at the scene, and when the other officer arrived, they patted Defendant down and placed him in the back of the other officer's patrol car. Lieutenant Kant testified that he then called for a DUI unit to respond to the scene.

Officer Ken Fox of the Memphis Police Department's DUI Unit responded to Lieutenant Kant's call and received information from Lieutenant Kant concerning Defendant. Officer Fox testified that Defendant was transported to the "Traffic Precinct to do a Standardized Field Sobriety Test." Officer Fox learned that Defendant had a prior DUI conviction, and he read the Implied Consent Law to Defendant, and Defendant consented to have his blood drawn. Officer Fox noted that Defendant was cooperative. He said that Defendant did not want to perform the field sobriety tests because he was cold; however, Officer Fox testified that Defendant never indicated that he did not want to have his blood drawn. Officer Fox's interaction with Defendant was recorded on video.

On cross-examination, the following exchange took place between Officer Fox and defense counsel:

Q. Officer Fox.
A. Yes, sir.

Q.     Now, you prepared - - you prepared [the] Tennessee Implied Consent Advisement form?

A.     Yes, sir.

Q.     All right.  This is what - - this is customary if one has a DUI - - for a DUI arrest; correct?

A.     Yes, sir.  That's our report.

Q.     All right.  On your report - - and at the time that this report was drawn up the law was that if someone has a prior DUI conviction they have to submit to a blood draw; correct?

A.     Yes, sir.

Q.     They don't have any choice in the matter; correct?

A.     Yes, sir.

Q.     They can't consent.  They can't say I don't want to submit to a blood draw?

A.     Right.

Q.     How - - I want to give you an opportunity to review this and tell me, explain to me how it says - - let you review this document first.  I'm sorry.  Are you familiar with that document, Officer?

A.     Yes, sir.

Q.     Okay.  Now, it says here that the subject - - you can go to Section 3.  It says subject will consent to a test or tests?

A.     Yes, sir.

Q.     All right.  How did [Defendant] consent to the test?  Was it a written consent?

A.     No.  He - - he - - I explained to him that in the State of Tennessee if you have a prior DUI it's mandatory that we draw your blood and he - - he simply said okay.

Q.     So was there any basis - - in that kind of situation they don't ever have to sign off on anything?  They don't have to sign off on - -

A.     There's nothing mandatory for him to sign, you know.  We can get him to sign but there's nothing saying that we have to get him to sign.

Q.     Back in April 21st, 2013 when someone is pulled over and they have to submit to a blood draw, they don't sign any consent forms like that.  They do now; correct?

A.     If the officer chooses to get him to sign it.

Q.     So it's within the discretion of the police officer?

A.     Yes, sir.

On redirect examination, Officer Fox testified that if a person refused to consent to a blood draw, it was his practice to obtain a search warrant signed by a judicial commissioner authorizing the blood draw.  Officer Fox testified that if Defendant had

3

refused to have his blood drawn, Officer Fox would have obtained a search warrant. He was present when two tubes of blood were drawn from Defendant by a nurse. The tubes were taken to the Tennessee Bureau of Investigation (TBI) Crime Lab.

Defendant testified that he did not understand what Officer Fox told him about the mandatory blood draw. He testified, "I just said okay." Defendant testified that he was not "consenting to get [his] blood drawn or anything." He also felt that he did not have a choice in the matter. Defendant testified that his understanding was that "we [are] going to take your blood either way. So it doesn't matter what you say."

On cross-examination, Defendant agreed that on the videotape, he asked Officer Fox what the officer meant. Officer Fox then told Defendant that the law "says you have to give blood because you have a prior conviction." Defendant then replied, "okay." Defendant and Officer Fox walked to the front of the precinct, and a nurse drew his blood and gave it to Officer Fox.

After the suppression hearing, the trial court issued a written order granting Defendant's motion to suppress. The order contained the following pertinent factual findings:

> Here, the evidence does not weigh in favor of Defendant's "consent" being free and voluntary or free from contamination. First, Officer Fox explained the implied consent law to Defendant as he understood it in April 2013, giving the impression that Defendant had no choice but to submit to the testing. In the video, Defendant is clearly heard asking Officer Fox to explain the law once more. Officer Fox explains again that Defendant, because he has a prior DUI conviction, must give a blood sample. Defendant then states, almost rhetorically, "so I have to give blood." It appears that Defendant feels he has no choice in the matter; he is coerced into submitting to the test. When Defendant utters the word "okay" to Officer Fox, it is not consent so much as resignation to this compelled situation. Defendant did not freely and voluntarily, and without duress or coercion, consent to the blood test.
>
> Second, the State made much of Defendant's cooperative attitude during the taking of the blood sample. However, cooperation is not evidence of a freely, voluntarily given consent. If anything, it is more evidence that Defendant, already believing he had no choice, did not wish to make a bad situation worse for himself with belligerence. Perhaps Defendant was unsure if the blood would be taken forcibly or with hostility if he

4

fought the test. In any event, cooperation with a coerced test is not consent.

Because Defendant's "consent" is not freely given without coercion, there is no valid consent within the meaning of the Fourth Amendment. As a result, the blood taken from Defendant was an illegal search that must be suppressed at trial.

The trial court entered a subsequent supplemental order granting Defendant's motion to suppress which contained the following:

In the Court's prior Order, no exigent circumstances were found giving rise to an exemption [sic] to the warrant requirement, thus making the warrantless taking of Defendant's blood for testing unconstitutional under the Fourth Amendment. Consent is, almost by definition, at issue in any case involving the Tennessee implied consent statute. In *State v. Janosky*, No. M1999-02574-CCA-R3-CD, 2000 WL 1449367, *6 (Tenn. Ct. Crim. App. Sept. 29, 2000), the Court of Criminal Appeals held that "the voluntariness of the motorist's consent at the time of the testing is of no consequence because the motorist has impliedly consented as a matter of law when he or she elects to operate a motor vehicle" on Tennessee roads. *Janosky*, 2000 WL 1449367, at *6. Yet, recent case law from the same court has negated this rule. "While the State may attempt to persuade the accused to submit to a search by providing consequences for a failure to submit to a tested ordered upon probable cause . . . *the privilege of driving does not alone create consent for a forcible blood draw. State v. Wells*, No. M2013-01145-CCA-R9-CD, 2014 WL 4977356, *13 (Tenn. Ct. Crim. App. October 6, 2014). The court went on to state that a mandatory blood draw "is not reasonable unless performed pursuant to a warrant or to an exception to the warrant requirement" because of the "gravity of the intrusion into privacy inherent in a forcible blood draw." *Id.* (emphasis added)

The Court would also like to clarify that it does not believe the reading of the implied consent form to be a coercive act leading to consent on the part of a defendant. The "consent" relied upon by the State in this case was coerced in the sense that Defendant did not freely or voluntarily give consent; it was not given at all, in fact. The phrase "free and voluntarily" implies that the person consenting is aware of what they are allowing the police to do. *State v. McMahan*, 650 S.W.2d 383, 386 (Tenn. Ct. Crim. App. 1983). "The sufficiency of the consent depends

5

largely upon the facts and circumstances presented by each particular case." *State v. Blackwood*, 713 S.W.2d 677, 680 (Tenn. Crim. App. 1986). The facts of this case show that Defendant felt he had no choice but in cooperating with the test.

> Officer Fox explained the implied consent law to Defendant as he understood it in April 2013, giving the impression that Defendant had no choice but to submit to the testing. In the video, Defendant is clearly heard asking Officer Fox to explain the law once more. Officer Fox explains again that Defendant, because he has a prior DUI conviction, must give a blood sample. Defendant then states, almost rhetorically, "so I have to give blood." It appears that Defendant feels he has no choice in the matter; he is coerced into submitting to the test. When Defendant utters the word "okay" to Officer Fox, it is not consent so much as resignation to this compelled situation. Defendant did not freely and voluntarily, and without duress or coercion, consent to the blood test.

Order Grant'g Def.'s Mot. to Suppress 7, Oct. 30, 2014. When Defendant submitted to the blood draw, it was not the reading of the implied consent form that coerced his submission to the test; it is the explanation of Tennessee law offered by Officer Fox.

Further, the October 30 Order of this Court stated that "cooperation with a coerced test is not consent." *Id*. at 8. *Janosky* mentions that express refusal is the hallmark of lack of consent, no voluntariness of submission. *Janosky*, 2000 WL 1449367, at *6. Yet, in a case with a clear lack of express consent, the "facts and circumstances [of] each particular case" are elevated in importance. *Blackwood*, 713 S.W.2d at 680. In the case at bar, we have a lack of express consent but actions equivalent to voluntariness of submission. *Janosky*, 2000 WL 1449367, at *6; Order Grant'g Def.'s Mot. to Suppress 7, Oct. 30, 2014. It is Defendant's belief that he has no alternative but to submit to the test, based upon the explanation of the law provided by Officer Fox, that remains dispositive on the issue of consent.

Because Defendant's "consent" is not freely given without coercion, there is no valid consent within the meaning of the Fourth Amendment.

As a result, the blood taken from Defendant was an illegal search that must be suppressed at trial.

## ANALYSIS

In this interlocutory appeal, the State argues that the "totality of the circumstances" demonstrates that Defendant voluntarily consented to a blood draw in this case and that Defendant gave both actual and implied consent to have his blood drawn. Therefore, according to the State, the trial court erred by granting Defendant's motion to suppress. We disagree.

In reviewing the trial court's decision on a motion to suppress, we review the trial court's legal conclusions de novo. *State v. Northern*, 262 S.W.3d 741, 747 (Tenn. 2008). In doing so, we give deference to the trial judge's findings of fact unless the evidence preponderates otherwise. *Id.*; *see State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). "'[C]redibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact.'" *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). In reviewing the findings of fact, evidence presented at trial may "'be considered by an appellate court in deciding the propriety of the trial court's ruling on the motion to suppress.'" *State v. Garcia*, 123 S.W.3d 335, 343 (Tenn. 2003) (quoting *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001)). The prevailing party on the motion to suppress is afforded the "'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *Northern*, 262 S.W.3d at 748 (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)); *see State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000); *Odom*, 928 S.W.2d at 23.

Both the federal and state constitutions provide protections from unreasonable searches and seizures. The general rule is that a warrantless search or seizure is presumed unreasonable, and any evidence discovered by virtue thereof is subject to suppression. *See* U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "[T]he most basic constitutional rule . . . is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)); *see also State v. Bridges*, 963 S.W.2d 487, 490 (Tenn. 1997) ("[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."). "It is, of course, well settled that one of the exceptions to the warrant

requirement is a search conducted pursuant to consent." *State v. Bartram*, 925 S.W.2d 227, 230 (Tenn. 1996). "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." *State v. Jackson*, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993). It is the burden of the prosecution to prove that the defendant freely and voluntarily gave consent. *State v. McMahan*, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). "'The existence of consent and whether it was voluntarily given are questions of fact.'" *State v. Ashworth*, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999)(quoting *McMahan*, 650 S.W.2d at 386). Actual consent to a warrantless search "must be 'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *State v. Ingram,* 331 S.W.3d 746, 760 (Tenn. 2011)(quoting *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007)).

State compelled blood draws are considered to be searches for Fourth Amendment purposes. *State v. Jordan*, 7 S.W.3d 92, 98 (Tenn. Crim. App. 1999)(quoting *Schmerber v. California*, 384 U.S. 757, 767 (1966)); *See also Missouri v. McNeely*, 133 S.Ct. 1552, 1558 (2013). Therefore, in this case we must determine whether the warrantless blood draw was justified by an exception to the warrant requirement. The State argues that Officer Fox had both actual and implied consent to draw a sample of Defendant's blood.

We find that the trial court in this case made specific factual findings, as recited above, concerning the issue of actual consent. The trial court found that Defendant did not give consent to have his blood drawn, and our review of the record does not preponderate against this finding. Officer Fox explained the implied consent law to Defendant as it was understood in April of 2013. Defendant asked Officer Fox to explain the law one more time. The officer explained to Defendant that because Defendant had a prior DUI, Defendant must give a blood sample. Defendant stated, "so I have to give blood." After that, Defendant stated "okay." As found by the trial court, this implies that Defendant felt that he had no choice other than to submit to the blood draw. Defendant's consent was not "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *Ingram,* 331 S.W.3d at 760 (citing *State v. Berrios*, 235 S.W.3d 99, 109 (Tenn. 2007) (quoting *State v. Simpson*, 968 S.W.2d 776, 784 (Tenn. 1998)). Moreover, as also pointed out by the trial court, Defendant's cooperation with the blood draw does not imply actual consent. As noted above, well-settled case law (routinely relied upon by the State whenever it prevails in the trial court) mandates that the appellate court must recognize that the credibility of the witnesses and the resolution of conflicts in the evidence are matters to be determined solely by the trier of fact, in this case the trial judge. *Northern*, 262 S.W.3d at 747-48 (quoting *Odom*, 928 S.W.2d at 23). The trial court made a factual finding based upon its review of the evidence that Defendant did not consent to have his blood sample drawn. There was evidence presented which justified this conclusion by the trial court. The trial court obviously did not credit the officer's testimony that Defendant had consented to the blood test.

Next, the State argues that Defendant gave implied consent to the blood draw by operating a motor vehicle on the roadways of Tennessee and that this implied consent was never revoked. At the time of Defendant's arrest, T.C.A. § 55-10-406 provided, in pertinent part, as follows:

(a)(1) Any person who drives a motor vehicle in this state is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood, a test or tests for the purpose of determining the drug content of the person's blood, or both tests. However, no such test or tests may be administered pursuant to this section, unless conducted at the direction of a law enforcement officer having reasonable grounds to believe the person was driving while under the influence of alcohol, a drug, any other intoxicant or any combination of alcohol, drugs, or other intoxicants as prohibited by § 55-10-401, or was violating § 39-13-106, § 39-13-213(a)(2) or § 39-13-218.

.    .    .

(4)(A) If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a).

.    .    .

(f)(2) If a law enforcement officer has probable cause to believe that the driver of a motor vehicle has committed a violation of § 39-13-213 (a)(2), § 39-13-218 or § 55-10-401 and has been previously convicted of § 39-13-213(a)(2), §39-13-218 or §55-10-4012 the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood. The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test.

T.C.A. § 55-10-406(a)(1), (a)(4)(A), (f)(2).

The trial court also made specific findings of fact concerning this issue, and the record does not preponderate against those findings. Relying on cases from this court, the trial court found in part that the privilege of driving does not alone create consent for

9

a forcible blood draw. T.C.A. § 55-10-406(f)(2) mandated the taking of Defendant's blood in this case. However, this court has held that this does not eliminate the warrant requirement under the Fourth Amendment. As several panels of this court have pointed out, the statute is silent as to whether a warrant is required for the mandatory blood draw, and this court has concluded that the provision was not intended "to operate as a blanket exception to the warrant requirement." *State v. Charles Kennedy*, No. M2013-02207-CCA-R9-CD, 2014 WL 4953586, at \*12 (Tenn. Crim. App. Oct. 3, 2014); *State v. James Dean Wells*, No. M2013-01145-CCA-R3-CD, 2014 WL 4977356, at \*13 (Tenn. Crim. App. Oct. 6, 2014); *But cf.*, *State v. A.D. Smith, III*, No. W2015-00133-CCA-R9-CD, 2015 WL 9177646 (Tenn. Crim. App. Dec. 15, 2015)(dissent holding that privilege of driving does not alone create consent for a forcible blood draw)(majority holding that Defendant's implied consent was never withdrawn or revoked).

We also conclude that the "the privilege of driving does not alone create consent for a forcible blood draw," and "such a search if not reasonable unless performed pursuant to a warrant or an exception to the warrant requirement." *James Dean Wells*, No. M2013-01145-CCA-R3-CD, 2014 WL 4977356, at \*13. The State, in a footnote in its brief, asserts that this case is an appropriate case for application of the so called "good faith exception" to the Fourth Amendment's exclusionary rule as adopted in Federal Courts by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984). We believe that Tennesseans have adjusted well for over three decades under our State's constitution without adoption of any good faith exception to the protections afforded to persons by the Fourth amendment over 200 years ago and in Art. I § 7 of Tennessee's Constitution. *See State v. Bearden*, 326 S.W.3d 184, 188 (Tenn. Crim. App. 2010). We should not alter Tennessee Law. *See State v. Christopher Wilson*, No. W2015-00699-CCA-R9-CD, 2016 WL 1627145 (Tenn. Crim. App. April 21, 2016)(Woodall, P.J., concurring opinion).

## CONCLUSION

Because there was no warrant and no exception to the warrant requirement existed in this case, we affirm the judgment of the trial court suppressing the results of Defendant's blood test.

_____
THOMAS T. WOODALL, PRESIDING JUDGE