IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 1, 2016 Session


**STATE OF TENNESSEE v. SHECKY DOTSON**


**Appeal from the Criminal Court for Shelby County**
**No. 13-01589      James M. Lammey, Judge**

_____


**No. W2015-00746-CCA-R3-CD  -  Filed July 13, 2016**

_____


Shecky Dotson ("the Defendant") was indicted in Count 1 for driving while under the influence of an intoxicant ("DUI"), in Count 2 for reckless driving, and in Count 3 for DUI per se.  In a separate document, the grand jury presented that the Defendant had one prior conviction for DUI.  After a jury trial, the Defendant was acquitted in Count 1 and Count 2 and convicted in Count 3.  On appeal, the Defendant argues that the trial court should have suppressed the results of his blood alcohol test.  Specifically, he contends that the trial court erred in finding the Defendant gave actual consent for a blood draw and erred in finding the Defendant failed to revoke his implied consent.  After a thorough review of the record, we have determined that, based on a totality of the circumstances, the Defendant freely and voluntarily gave actual consent for a blood draw and that the trial court did not err in denying the Defendant's motion to suppress the results of the warrantless blood draw.  We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Shecky Dotson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and William Bond, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

Prior to trial, the Defendant filed a "Motion to Suppress Blood Results" arguing that subjecting him to a warrantless blood draw violated the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution. At the suppression hearing, Shelby County Sheriff's Deputy Tom Nichols of the "Metro DUI unit" testified that he was patrolling in Bartlett when he received a "be on the lookout" alert for a suspect wanted for a robbery. While on patrol, Deputy Nichols observed a truck traveling at an "extremely high rate of speed" and immediately activated his emergency lights and gave pursuit. He estimated the truck was traveling at fifty miles per hour in a thirty miles per hour speed zone. After stopping the Defendant's vehicle, Deputy Nichols instructed the Defendant to sit on the curb while he waited for officers from the Bartlett Police Department to arrive. Deputy Nichols testified that during the initial encounter he noticed the Defendant had "glassy, watery eyes[;] [h]is speech was somewhat confused and slurred; and he had the odor of intoxicating beverage about his person." After the Bartlett officers arrived, they determined that the Defendant was not their robbery suspect.

Deputy Nichols then proceeded with a DUI investigation and administered the horizontal gaze nystagmus, the nine-step walk-and-turn, and the one-leg stand tests. According to Deputy Nichols, the Defendant failed the tests and was arrested for DUI. Deputy Nichols advised the Defendant that he was under arrest, placed the Defendant in the squad car, and read the implied consent form to the Defendant. Deputy Nichols learned from police dispatch that the Defendant had a prior DUI conviction, so he informed the Defendant that the blood draw was mandatory. Deputy Nichols recalled that the Defendant said he would "take any test," but he also stated that the Defendant refused to sign the implied consent form. The Defendant was transported to the hospital, where his blood was drawn.

A forty-seven-minute audio/video recording of the stop was entered as an exhibit during the suppression hearing. The video begins with the Defendant seated on the curb at the rear of his truck with two officers watching over him. On the recording, Deputy Nichols can be heard being advised over the radio that the Defendant had a prior DUI conviction. After Deputy Nichols exited his vehicle, he approached another officer stating "you stick around, he's got a prior [DUI]." The officers then discussed the nearest location for drawing the Defendant's blood.

After the Defendant completed the field sobriety tests, he was handcuffed and then allowed to call his fiancée to ask her to come retrieve his truck. He was then placed into the backseat of Deputy Nichols' vehicle. Deputy Nichols retrieved an open bottle of vodka from the Defendant's truck, and the Defendant denied that it belonged to him.

After some initial discussion, Deputy Nichols read from a portion of the Tennessee Implied Consent Advisement ("the implied consent form"), stating:

> There is probable cause to believe that you have committed a crime that requires blood or breath testing.
>
> If you refuse to submit to either or both of these tests, they will not be given unless required by law. If you refuse to be tested your license will be suspended for at least one year and up to five years, depending on your driving history. Also if you refuse you may be ordered to install and keep an ignition interlock device on your vehicle for a year or more.
>
> If your license is currently suspended for DUI, Vehicular Assault, Vehicular Homicide or Aggravated Vehicular Homicide and you refuse or attempt to refuse to submit to either or both tests, you commit the crime of violating the implied consent law. If a Judge finds you guilty of this separate offense, the Judge shall sentence you to a minimum of five days and up to eleven months and twenty-nine days in jail in addition to any sentence for DUI and a mandatory fine of up to $1,000.

Officer Nichols then asked the Defendant, "You okay with all of that?" to which the Defendant responded, "No, I am not." Officer Nichols then asked the Defendant, "Do you need me to read it over?" The Defendant responded, "Why are you doing this to me?"

Officer Nichols continued to read from the implied consent form but then stated:

> Here's the deal, you've been convicted of a prior DUI. So we're going to take your blood. We are going to take you to St. Francis and have nurses draw your blood.

The Defendant then proceeded to talk about issues related to his prior DUI. Deputy Nichols continued:

> Here's the deal, I am going to take you over here . . . . [The Defendant interrupts talking about other issues.] Okay you can—you can either consent to the test or not consent to the test, but I am going to take you over there and do a mandatory test anyway because of your prior conviction.

The Defendant immediately responded, "I am always going to take a test." Deputy Nichols stated, "Okay." The Defendant then stated, "But it's just that I would insist that you wait on my fiancée first." Deputy Nichols agreed to wait for the Defendant's fiancée and continued to fill out paperwork. During this time, the Defendant continued to talk to Deputy Nichols, stating at one point, "I am reading everything on that

- 3 -

paper," to which Officer Nichols replied, "Okay, you'll get a copy of it." The Defendant was not asked to sign the implied consent form during the recording.

Deputy Nichols testified that the Defendant was transported to the hospital, where his blood was drawn. Then, the Defendant was transported to "201,"[1] where he refused to sign the implied consent form. Deputy Nichols said that, before refusing to sign the form, the Defendant had not given any indication that he would not submit to the blood test.

Bethany McBride, a forensic scientist assigned to the toxicology unit of the Tennessee Bureau of Investigation, twice tested the blood drawn from the Defendant. The blood alcohol content ("BAC") of the first test was .1836, the BAC of second test was .1805.

The Defendant testified at the suppression hearing that he told Deputy Nichols that he would take the test because Deputy Nichols told him "he was going to take his blood anyway." The Defendant said that, if he had been told he had a right to refuse, he would not have taken a blood test. On cross-examination, the Defendant agreed that he never told Deputy Nichols that he did not want to take the test. On redirect examination, the Defendant said that, when he was asked by Deputy Nichols whether he was "alright with that," he said "no." The Defendant reiterated that he thought he did not have a choice to refuse the blood draw.

The trial court found that the Defendant gave "valid consent" for the blood draw and specifically stated that the implied consent law was not at issue in this case. The trial court denied the Defendant's motion to suppress and subsequently denied the Defendant's application to appeal pursuant to Tennessee Rule of Appellate Procedure 9. The Defendant was tried before a jury and found not guilty in Count 1 and Count 2 and guilty of DUI per se in Count 3. After the jury returned its verdict in Count 3, the Defendant stipulated that he had a prior DUI conviction and waived his right to a jury trial on second offense DUI. The trial court sentenced the Defendant to 11 months and 29 days, with 45 days of incarceration and the balance suspended with two years of supervised probation. This timely appeal followed.

## II. Analysis

On appeal, the Defendant argues that he did not give actual consent to the blood draw but, instead, merely "acquiesced to Deputy Nichols' claim of lawful authority" because he believed his blood would be taken by force. Second, the Defendant argues that his refusal to submit to a blood test "amounted to a withdrawal of the implied consent imposed by [Tennessee Code Annotated section] 55-1-406" and that Deputy

---

[1] Although "201" is not further identified in the transcript, we understand that "201" refers to the address of the Criminal Justice Complex in Shelby County.

- 4 -

Nichols needed to obtain a warrant before taking the blood sample. The State argues that the Defendant freely and voluntarily consented to his blood being drawn. We agree with the State.

A trial court's factual findings on a motion to suppress are binding on appeal unless the evidence preponderates against them. State v. Binnette, 33 S.W.3d 215, 217 (Tenn. 2000); State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences drawn therefrom. Id. However, we review the trial court's application of the law to the facts de novo with no presumption of correctness. State v. Williamson, 368 S.W.3d 468, 473 (Tenn. 2012).

Both the United States and Tennessee Constitutions guarantee the right to be free from unreasonable searches and seizures. U.S. Const. Amend. IV; Tenn. Const. Art. I, § 7. A blood draw conducted by law enforcement for use as evidence in a criminal investigation constitutes a search subject to constitutional protection. Missouri v. McNeely, __ U.S. __, 133 S. Ct. 1552, 1558 (2013); Schmerber v. California, 384 U.S. 757, 769-70 (1966). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). Consent is one of the recognized exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).

In order to be valid, actual consent must be "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" State v. Ingram, 331 S.W.3d 746, 760 (Tenn. 2011) (quoting State v. Berrios, 235 S.W.3d 99, 109 (Tenn. 2007)). "Whether an individual voluntarily consents to a search is a question of fact to be determined from the totality of the circumstances." Berrios, 235 S.W.3d at 109. "The pertinent question is . . . whether the [individual's] act of consent is the product of an essentially free and unconstrained choice. If the [individual's] will was overborne and his or her capacity for self-determination critically impaired, due process is offended." State v. Cox, 171 S.W.3d 174, 185 (Tenn. 2005) (citing Schneckloth, 412 U.S. at 225-26). Factors to be considered when evaluating the voluntariness of consent include the time and place of the encounter; whether the encounter was in a public or secluded place; the number of officers present; the degree of hostility; whether weapons were displayed; whether consent was requested; and whether the consenter initiated contact with the police. Id. The State bears the burden of proving that the consent was freely and voluntarily given. State v. Blackwood, 713 S.W.2d 677, 680 (Tenn. Crim. App. 1986).

In cases involving mandatory blood draws, the threat of a mandatory blood draw, alone, may not render a defendant's consent involuntary. State v. Patrick Lee Mitchell, No. M2014-01129-CCA-R3-CD, 2015 WL 2453095, at *4 (Tenn. Crim. App. May 22, 2015), no perm. app. filed. Instead, courts look at the entire record to determine whether the totality of the circumstances shows that the defendant's consent was voluntary. Compare id. (defendant's consent was voluntary when the officer treated defendant courteously and defendant had some familiarity with the criminal justice system even though the officer informed defendant that the blood draw was mandatory due to the defendant's prior DUI), with State v. Helkie Nathan Carter, No. M2015-00280-CCA-R9-CD, 2016 WL 3044216, at *5 (Tenn. Crim. App. May 20, 2016) (defendant's consent was involuntary when he was ordered out of his car at gunpoint and informed that officers would hold him down to take his blood by force if he refused to consent).

In this case, the trial court found that the Defendant had voluntarily consented to the blood draw. In the video of the stop, Deputy Nichols began to read the implied consent form and asked the Defendant if he was "okay with all of that," to which the Defendant responded, "No, I am not." However, later in the video, Deputy Nichols explained that the Defendant had the choice to either refuse or submit to the test but that the blood test was mandatory due to the Defendant's prior DUI. The Defendant then responded, "I am always going to take a test." From the video recording of the stop, it is apparent that Deputy Nichols treated the Defendant with the utmost professionalism. Additionally, the Defendant was allowed to call his fiancée to come pick up his car; no weapons were displayed; and while other officers arrived on the scene to confirm that the Defendant was not the robbery suspect, Deputy Nichols was the primary officer with whom the Defendant communicated. Further, Deputy Nichols both read the implied consent form and paraphrased it in order to ensure that the Defendant understood its contents.

Although the Defendant told Deputy Nichols that he was not "okay with" the information contained in the implied consent form, he later said that he was "always going to take a test," and Deputy Nichols testified that the Defendant gave no other indication that he would refuse to submit to the blood test until *after* his blood had been taken and he had been transported to 201. At that point, he refused to sign the implied consent form. To the extent that the Defendant's refusal to sign the implied consent form indicates that he revoked consent, the blood test had already been completed at that point, and the revocation of his consent does not affect the admissibility of the evidence. See State v. Michael Shayne Cochran, No. M2006-02175-CCA-R3-CD, 2007 WL 2907281, at *3 (Tenn. Crim. App. June 19, 2007) (stating "the results for a BAC test conducted on a conscious defendant who is capable of consenting to a blood draw are admissible, even if the defendant changes his or her mind after the sample has been collected[]"). The record reflects that the trial court considered the relevant factors and concluded upon review of the totality of the circumstances that the State had proven by a preponderance of the evidence that the statement was voluntary. Upon review, we conclude that the

evidence does not preponderate against the court's findings and that the findings support the court's conclusion. The Defendant is not entitled to relief on this basis.

Even though the Defendant acknowledges that the trial court specifically stated that implied consent was not at issue in this case, he argues that he revoked his implied consent in this case when he "objected" to having his blood drawn after being read portions of the implied consent form. The Defendant correctly notes that Tennessee Code Annotated section 55-10-406 does not, alone, create an exception to the warrant requirement of the United States and Tennessee Constitutions. See Helkie Nathan Carter, 2016 WL 3044216, at *6; State v. James Dean Wells, No. M2013-01145-CCA-R3-CD, 2014 WL 4977356, at *13 (Tenn. Crim. App. Oct. 6, 2014); State v. Charles A. Kennedy, No. M2013-02207-CCA-R3-CD, 2014 WL 4953586, at *12 (Tenn. Crim. App. Oct. 3, 2014). But see State v. Corrin Kathleen Reynolds, No. E2013-02309-CCA-R9-CD, 2014 WL 5840567, at *10 (Tenn. Crim. App. Nov. 12, 2014) ("[A]nyone who exercises the privilege of operating a motor vehicle 'is deemed to have given consent to a test or tests for the purpose of determining the alcoholic content of that person's blood.'"), perm. app. granted (Tenn. Mar. 16, 2015); State v. Darryl Alan Walker, No. E2013-01914-CCA-R3-CD, 2014 WL 3888250, at *6 (Tenn. Crim. App. Aug. 8, 2014) ("[C]onsent occurs at the point that a driver undertakes the privilege of operating a motor vehicle in the State of Tennessee, not at the point the implied consent form is read[.]"); State v. Humphreys, 70 S.W.3d 752, 761 (Tenn. Crim. App. 2001) ("[A]nyone who exercises the privilege of operating a motor vehicle in this state has consented in advance to submit to a breath alcohol test."). However, in this case, the trial court explicitly stated that it was not relying upon implied consent to deny the Defendant's motion to suppress. Additionally, we have already determined that the evidence does not preponderate against the court's findings and that the findings support the court's conclusion that the Defendant voluntarily consented to the blood test. Therefore, an exception to the warrant requirement existed, and we need not address the Defendant's implied consent argument.

### III. Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE